# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:23-cv-00106-MR

| | | |
|---|---|---|
| FRANK I. HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| | ) | |
| BRADLEY DAVIDSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment [Doc. 69] and Plaintiff's unauthorized Surreply [Doc. 81].

## I.    PROCEDURAL BACKGROUND

Pro se Plaintiff Frank I. Hall ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina.  He filed this action pursuant to 42 U.S.C. § 1983 in a verified Complaint against the Wadesboro Police Department and the Anson County Police Department based on the alleged use of excessive force incident to arrest by several unnamed officers.  [Doc. 1].  On initial review, the Court concluded that Plaintiff failed to state a claim for relief and allowed Plaintiff to amend his Complaint.  [Doc. 14].  Plaintiff filed an

unverified Amended Complaint, naming Talmadge Legrand and Cuong Phan, both identified as Officers with the Wadesboro Police Department, and two John Doe "Police or Sheriff" as Defendants. [Doc. 15]. Plaintiff's Amended Complaint survived initial review on Plaintiff's individual capacity Fourth Amendment excessive force claims against these Defendants. [Doc. 16]. Plaintiff's remaining claims were dismissed for failure to state a claim for relief. [Id. at 6]. Defendants Bradley Davidson and Jonathan Williams were substituted for Defendants John Doe #1 and John Doe #2, respectively. [6/20/2023 Text Order]. Defendants answered Plaintiff's Amended Complaint, and Defendants Phan and Legrand asserted counterclaims against Plaintiff for battery, which remain pending. [Docs. 24, 25]. After Plaintiff's deposition, the parties filed a joint stipulation of dismissal, dismissing Defendant Williams because Williams was not at the scene of the incident that is the subject of Plaintiff's Amended Complaint. [Doc. 58]. As such, only Davidson, Legrand, and Phan remain as Defendants in this matter.

Defendants moved for summary judgment. [Doc. 69]. In support of their motion, Defendants submitted a memorandum, the Affidavits of Defendants Phan, Legrand, Davidson, and defense counsel, excerpts from Plaintiff's deposition in this matter, and video footage from body cameras

worn by Defendant Phan and Officer Anzuldua and from Anzuldua's patrol vehicle camera. [Docs. 69-1 to 69-8, 70; <u>see</u> 3/8/2024 (Court Only) Docket Entry]. Defendants argue they are entitled to summary judgment because the force used on Plaintiff was objectively reasonable and because they are entitled to qualified immunity in any event.[1] [Doc. 70].

Thereafter, the Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 71]. Plaintiff responded to Defendants' summary judgment motion. He submitted a memorandum,[2] an incident report by the Wadesboro Police Department, medical records, Defendants' Answer to Plaintiff's Amended Complaint, and

---

[1] Defendants Phan and Legrand stipulate to the dismissal of their counterclaims if the Court grants Defendants' summary judgment motion. [Doc. 70 n.2].

[2] Plaintiff purports to submit his memorandum under penalty of perjury. [<u>See</u> Doc. 75-1 at 19]. The Court, therefore, will consider the factual matters alleged therein that are within Plaintiff's personal knowledge as part of the forecast of evidence here. To the extent such evidence conflicts with Plaintiff's original verified Complaint, however, the Court will disregard its evidentiary value. <u>See</u> <u>Goodman v. Diggs</u>, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"); <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 806, 119 S.Ct. 1597 (1999) ("[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.").

Defendants' discovery responses.[3]  [Docs. 75-77].  Defendants replied [Doc. 78] and Plaintiff filed an unauthorized surreply [Doc. 81], which the Court will strike.

This matter is now ripe for adjudication.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine

---

3 In his memorandum, Plaintiff makes repeated mention of a flash drive containing certain evidence.  [See Doc. 75-1 at 8-9; Doc. 76 at 2].  Plaintiff, however, did not submit any flash drive with his materials and neither the flash drive nor the materials allegedly stored on it are before the Court.

4

issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and construe all reasonable inferences and ambiguities against the movant and in favor of the nonmoving party. Wai Man Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020); see Anderson, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the

nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott</u> <u>v. Harris</u>, 550 U.S. 372, 380 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts ….  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).  To be sure, "at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video 'blatantly' contradicts the nonmovant's position."  <u>Simmons v. Whitaker</u>, 106 F.4th 379, 385 (4th Cir. 2024) (citing <u>Iko v. Shreve</u>, 535 F.3d 225, 230 (4th Cir. 2008)).

## III.  FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.[4]

On the evening of May 26, 2020, Defendant Phan, a Wadesboro police officer, was on patrol in a marked police vehicle with his partner that night, Sergeant Donald Morton.  [Doc. 69-5 at ¶ 2: Phan Dec.].  Defendant LeGrand was also on patrol as a Wadesboro police officer that evening.  [Doc. 69-6 at ¶ 2: LeGrand Dec.].   At approximately 9:45 p.m., Defendant Phan was monitoring radio traffic from dispatch, which reported shots fired on Salem Street, which is located in a residential neighborhood.  [Doc. 69-5 at ¶ 2].  Shortly thereafter, dispatch relayed a second report of gunshots on nearby Washington Street.  [Id.].  At that time, Defendant Phan was stopped at a red light facing northbound on Washington Street waiting to cross U.S. 74 to head to the scene.  [Id. at ¶ 3].  While stopped, Defendant Phan saw a white Kia sedan traveling south on Washington Street towards the patrol car.  Defendant Phan watched the Kia turn left into the rear parking lot of

_____

[4] The video footage submitted by Defendants is wholly consistent with their forecast of evidence and blatantly contradicts Plaintiff's forecast of evidence on material aspects of his claim. Because a party cannot defeat summary judgment by presenting evidence that is blatantly contradicted by the record as a whole, the Court cannot adopt Plaintiff's contradictory version of the facts for the purpose of ruling on this motion.  See Scott, 550 U.S. at 380, 127 S. Ct. at 1776.  Rather, the Court considers Plaintiff's forecast of evidence only to the extent it does not directly conflict with the video evidence.

America's Best Value Inn.  Seconds later, it quickly exited the front parking lot and made an erratic left turn onto eastbound U.S. 74.  Because of the Kia's rapid departure from the area of reported gunshots, Defendant Phan decided to turn right onto U.S. 74 to catch up with the Kia.  [Id.].  Defendant Phan watched the Kia change lanes multiple times before it turned left onto Stanback Ferry Ice Plant Road.  [Id. at ¶ 4].  At that point, Defendant Phan was close enough to the Kia to see that there were several occupants in the vehicle.  Defendant Phan activated his overhead blue lights and attempted a traffic stop, but the Kia turned right onto Park Avenue and then reentered U.S. 74 at a high rate of speed.  Defendant Phan then activated his siren and notified dispatch that they were in pursuit.  Defendant LeGrand, who was nearby and also driving a marked patrol vehicle, immediately joined in the pursuit, which proceeded through residential streets at approximately 55 to 60 miles per hour.  [Id.; Doc. 69-6 at ¶ 2].  Eventually, after running through two more stop signs, the Kia turned right onto Myrtlewood Lane, which leads into Wadesboro's housing projects.  [Doc. 69-5 at ¶ 5].  As Defendant Phan followed the Kia through a large parking lot, he saw the right rear passenger door open as though one or more occupants was preparing to flee on foot.  [Id.]. The Kia suddenly drove up a dirt embankment and stopped or crashed.  [Id.; Doc. 69-6 at ¶ 3].

8

As Defendant Phan exited his patrol car, he saw two adult males flee on foot from the Kia.  [Doc. 69-5 at ¶ 6; see Doc. 69-6 at ¶ 3].  Defendant Phan yelled at them to stop, and Defendants Phan and LeGrand immediately pursued them on foot as they disappeared behind a set of apartments.  [Id.; Doc. 69-6 at ¶ 3].  It was very dark, and the lighting conditions were poor.  [Doc. 69-5 at ¶ 6; Doc. 69-4 at 9: Plaintiff's Depo. (In describing the scene, Plaintiff testified, "So it's super dark.")].  Defendant LeGrand's attention turned to a male adult running behind the apartments.  [Doc. 69-6 at ¶ 7].  Suddenly, this man came towards Defendant LeGrand from between two apartment buildings, and LeGrand yelled, "Stop police, stop police!"  [Id. at ¶ 4].  The man, later identified as the Plaintiff, Frank Hall, "pop[ped] out" and started shooting.  [Doc. 69-4 at 10].  Although Plaintiff testified that he only shot in front of LeGrand's feet and "didn't hit [Phan and LeGrand] one time," Plaintiff shot LeGrand in the abdomen.  [Id. at 5, 9-10; Doc. 69-6 at ¶ 4].  Fearing the Plaintiff would shoot again, Defendant LeGrand fired back and saw the Plaintiff fall or duck away between two cars in the parking lot.  [Doc. 69-6 at ¶ 4].

Meanwhile, as Defendant Phan reached another set of apartments, he heard six to 10 gunshots to his left.  Looking to his left, Defendant Phan saw Defendant LeGrand kneeling down on the ground and immediately realized

he had been shot.  Defendant Phan also saw movement along the passenger side of a nearby parked Dodge Charger, believing it was LeGrand's shooter attempting to hide from Phan.  At that point, Defendant LeGrand called out to Phan to warn him that the shooter was hiding between the parked cars. [Doc. 69-5 at ¶ 6; Doc. 69-6 at ¶ 5].  Defendant LeGrand saw blood coming out of his side, so he repositioned himself in front of an apartment doorway and radioed, "Officer down, shots fired."  [Doc. 69-6 at ¶ 5].

Defendant Phan tried to locate the Plaintiff by looking over the front hood and then moved to the back of the vehicle along the driver's side.  [Doc. 69-1: Phan Body Worn Camera ("BWC"); <u>see</u> Doc. 69-5 at ¶ 7].  As Phan did so, the Plaintiff popped up from the passenger side of the Charger and rapidly fired three to five rounds at Phan from a semi-automatic handgun. Defendant Phan reacted by firing several rounds at the Plaintiff and relocated to the rear of the Charger to create distance between him and the Plaintiff. [<u>Id.</u>; <u>see</u> Doc. 69-6 at ¶ 5].

From Defendant Phan's position at the rear of the Charger, he looked along the passenger side to see if the Plaintiff was still there or had fled elsewhere.  Once again, the Plaintiff was right there waiting for Phan no more than two yards away.  The Plaintiff fired two or three more rounds, one of which struck the magazine pouch on Phan's utility belt, preventing the bullet

from entering Phan's body. Defendant Phan reacted by rapidly firing six to eight rounds at the Plaintiff until his magazine was empty. [Doc. 69-5 at ¶ 8]. Fearing that the Plaintiff was about to kill him, Defendant Phan moved away from the Charger to the left, dropped to one knee, and attempted to insert one of his two spare magazines into his handgun. The magazine would not load because of the impact from Plaintiff's bullet, so Phan discarded it and inserted the other spare magazine. Having not heard the Plaintiff run away from the Charger, and fearing he was lurking on the passenger side waiting for Defendant Phan to reappear – or worse – that he was going to circle around the car to finish Phan or LeGrand off, Defendant Phan lowered himself almost to the pavement and fired another four rounds underneath the Charger towards where he had last seen the Plaintiff standing. [Doc. 69-5 at ¶ 9; Doc. 69-2: Anzaldua Dashcam]. Defendant Phan's goal was to knock the Plaintiff off his feet to prevent him from shooting again. Those were the last rounds Defendant Phan shot that night. [Doc. 69-5 at ¶ 9]. Defendant Phan quickly retreated behind another parked car several stalls to the left just as Officer Kristen Anzaldua arrived in her patrol car. [Id. at ¶ 10; Doc. 69-2]. Approximately 50 seconds elapsed between LeGrand's shouting, "officer down" after he was shot in the abdomen and the final shots fired by Defendant Phan and approximately 35 seconds elapsed

between Defendant Phan being hit by Plaintiff's gunfire and Phan's final shots. [Doc. 69-1].

As Officer Anzaldua got out of her vehicle, Defendant Phan noticed Sergeant Morton arriving on foot to his left. Defendant Phan yelled, "No he's not down" and for them both to "stay back" and "get back" because the Plaintiff had a gun. [Docs. 69-5 at ¶ 10, 69-1, 69-3: Anzaldua BWC]. Officer Anzaldua replied, "I think he's hit," and proceeded to cautiously approach the Charger along the sidewalk in front of the parking spaces. [Docs. 69-5 at ¶ 11, 69-1, 69-3]. As she approached, Defendant LeGrand directed her to where he had last seen the Plaintiff, which was the passenger side of the Charger. [Doc. 69-5 at ¶ 11; Doc. 69-3]. Fearing that the other fleeing male suspect may appear at any moment and start shooting, Defendant Phan pivoted around the parking lot with his gun pointed outward looking for any potential threats. [Doc. 69-5 at ¶ 11].

Officer Anzaldua ordered the Plaintiff not to move and asked where his gun was located. Plaintiff moaned in response and may have said it was under his arm. [Id. at ¶ 12; Doc. 69-3]. Sergeant Morton joined Officer Anzaldua and multiple officers ordered Plaintiff not to move. Continuing his 360-degree visual sans of the area, Defendant Phan reached the rear of the Charger, where he saw Plaintiff face down on the pavement on the

passenger side with his feet pointed toward the sidewalk of the apartment building. Officer Anzaldua slid Plaintiff's gun, which was then located immediately to the left of his head, toward Defendant Phan along the pavement, which Defendant Phan stopped with his foot. Officer Anzaldua then handcuffed the Plaintiff behind his back. [Doc. 69-5 at ¶ 12; Doc. 69-3]. During the shootout, Plaintiff suffered gunshots to his face, leg, back, and buttocks.[5] [Doc. 1 at 7].

Defendant Davidson is currently a Detective Lieutenant with the Wadesboro Police Department. Although he was off duty the night of the night of the shootout, he did go to the scene in his investigative capacity after Plaintiff had been transported to the hospital. [Doc. 69-7 at ¶ 2: Davidson Dec.].

## IV. DISCUSSION

### A. Excessive Force

Excessive force claims in the context of an arrest are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 394 (1989). Reasonableness must be

---

[5] Plaintiff's claim relates only to the injuries to his lower back and right buttock, as Plaintiff concedes that the injuries to his face and leg were justified because he "was firing back at them." [See Doc. 69-4 at 15]. Although directly refuted by the body cam footage, Plaintiff asserts that the injuries he sustained when Defendant Phan shot underneath the Charger were not justified because Plaintiff was in "a prone position on [his] stomach" and no longer posed a threat. [Doc. 69-4 at 15; see Doc. 1 at 4-5, 7].

evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments---in circumstances that are tense, uncertain, and rapidly evolving---about the amount of force that is necessary in a particular situation." Id. at 396-97. "The question is 'whether the totality of the circumstances justifies a particular sort of seizure.'" Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)).

In evaluating objective reasonableness, the Supreme Court instructs courts to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

"When faced with a Fourth Amendment claim involving the use of deadly force, 'the question comes down to whether the circumstances presented an immediate threat that justified the officer's resort to lethal force as objectively reasonable." Boyle v. Azzari, Jr., 107 F.4th 298, 303 (4th Cir. 2024) (quoting Franklin v. City of Charlotte, 64 F.4th 519, 531 (4th Cir. 2023)). "[A]n officer may not use force against an incapacitated person 'unable to get up or otherwise defend himself,' even if the person is armed."

Id. (quoting Estate of Jones v. City of Martinsburg, 961 F.3d 661, 669-70 (4th Cir. 2020) (quoting Brockington v. Boykins, 637 F.3d 503, 505 (4th Cir. 2011)).

The relevant forecast of evidence shows that, after seeing the white Kia traveling from an area of reported gunfire, driving erratically, and leading Defendants Phan and LeGrand on a high-speed chase through a residential neighborhood, the Plaintiff fled from the Kia. The irrefutable video evidence further shows that, as Defendants Phan and LeGrand chased the Plaintiff on foot in the dark through the poorly lit Myrtlewood Apartments, Plaintiff fired several shots in their direction, one of which hit Defendant LeGrand in the abdomen, and that Plaintiff took cover on the passenger side of a Dodge Charger parked in the parking lot. The forecast of evidence shows that after Defendant LeGrand went down, Defendant Phan moved to the rear of the Charger, peering around it to locate the Plaintiff, who again fired multiple shots at Defendant Phan, hitting him in his utility belt. The forecast of evidence also shows that, approximately 35 seconds later and after struggling to reload his weapon, Defendant Phan, believing Plaintiff remained poised to shoot again, crouched to his knees and fired four rounds under the Dodge Charger, hoping to knock Plaintiff off his feet. Finally, the forecast of evidence shows that when additional officers arrived on the scene

15

right as Phan fired his final shots, he believed that Plaintiff was still a threat.

This forecast of evidence establishes that an objectively reasonable officer under the totality of circumstances would have perceived Plaintiff's firing shots at Defendant Phan at close range from the cover of a parked vehicle in the dark, one of which hit Defendant Phan, within seconds after Plaintiff had wounded Defendant LeGrand, as warranting deadly force. Moreover, there is no forecast of evidence that Defendant Phan was aware or that a reasonable officer under the circumstances would or should have been aware that the Plaintiff was on the ground and may have been incapacitated, no longer presenting an immediate threat of harm to Defendant Phan or others, when Phan fired the final shots.

Plaintiff contends that because he was wounded on the ground and posed no threat to Phan when Phan shot under the Charger, Defendant Phan's use of deadly force was unreasonable. The law does not support this conclusion.  Reasonableness must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.  Only with such 20/20 hindsight might one conclude here that Defendant Phan *could have* conceivably known and appreciated that Plaintiff was lying on the ground wounded when Phan fired under the Charger.  The only way, however, that Defendant Phan could have

known that Plaintiff was incapacitated was if he again tried to peer around the Charger. Having done so seconds before and been immediately shot by the Plaintiff, any such choice by Defendant Phan would have been objectively unreasonable. Any reasonable officer under the circumstances as they existed in the moment Defendant Phan fired the final shots would have similarly and reasonably believed that Plaintiff presented an immediate threat of deadly harm. See Boyle, 107 F.4th at 303.

As such, even construing the forecast of evidence in the light most favorable to the Plaintiff, all the Graham factors support the use of force against the Plaintiff. The use of force was, therefore, objectively reasonable as a matter of law. As such, there is no genuine issue for trial on Plaintiff's Fourth Amendment claim and it will be dismissed as to all Defendants.

### B. Qualified Immunity

Defendants argue that, even if the forecast of evidence shows that Defendants violated Plaintiff's constitutional rights, they are entitled to qualified immunity. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken

judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

"To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). Even where an officer commits a constitutional violation, that officer is still entitled to qualified immunity if, in light of clearly established law, the officer could reasonably believe his actions were lawful. Henry, 652 F.3d at 531.

Here, because Plaintiff has not forecasted evidence that Defendants violated a constitutional right, Defendants are also entitled qualified immunity on Plaintiff's individual capacity claims. Moreover, even if the forecast of evidence supported the finding of a constitutional violation, the Court would conclude that qualified immunity affords Defendant Phan "breathing room" and protects his decision to fire under the Dodge Charger. Ray, 781 F.3d at 100. The Court, therefore, grants summary judgment for Defendants on this ground as well.

## V.    CONCLUSION

In sum, for the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 69] is **GRANTED** and Defendants Phan and Legrands' Counterclaims [Doc. 25] are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Surreply [Doc. 81] is hereby **STRICKEN** from the record in this matter.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: August 5, 2024

Martin Reidinger
Chief United States District Judge